UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOPE B.,<br>    *Plaintiff*, | ) 3:21-CV-00674 (KAD)<br>)<br>) |
| v. | )<br>) |
| Kilolo KIJAKAZI,[1]<br>Acting Commissioner of the Social<br>Security Administration,<br>    *Defendant*. | ) SEPTEMBER 20, 2022<br>)<br>)<br>) |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

    The Plaintiff, Hope B. ("Plaintiff"), brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Administration"), denying her application for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision insofar as the Administrative Law Judge ("ALJ") did not properly consider whether her symptoms met an Administration listing and incorrectly formulated her residual functional capacity ("RFC"). Alternatively, she seeks a remand for further proceedings before the Commissioner. In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is based upon the correct application of legal standards, and thus should be affirmed. For the reasons set forth below, the Plaintiff's Motion to Reverse, ECF No. 17, is DENIED and the Commissioner's Motion to Affirm, ECF No. 24, is GRANTED.

---

[1] At the time the Plaintiff commenced this action, Andrew Saul was the Commissioner of Social Security. On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security and is therefore substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

1

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[2]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform their past relevant

---

[2] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

work; and (5) if the claimant is unable to perform their past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)–(v); 404.1509. The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there

is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On May 9, 2017, Plaintiff applied for Disability Insurance Benefits, alleging an onset of disability on December 31, 2009. Her claim was initially denied on December 8, 2018, and a subsequent Request for Reconsideration was denied on August 17, 2018. At Plaintiff's request, hearings were held on August 1, 2019, and August 4, 2020, after which the ALJ issued a decision denying the application on September 20, 2020.[3] Plaintiff submitted a request for further review on October 24, 2020, which the Appeals Council denied on March 16, 2021.

In his written decision, ALJ Kuperstein followed the sequential evaluation process for assessing disability claims.[4] At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, December 31, 2009, through the date of last insured, June 30, 2018. At Step Two, the ALJ determined that Plaintiff has multiple severe impairments: systemic lupus erythematosus ("SLE"), Sjogren's syndrome, osteoarthritis of the spine, rheumatoid arthritis, and Raynaud's syndrome. At Step Three, however, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1. At Step Four, the ALJ found that Plaintiff has the RFC to perform light work[5] subject to several limitations, to include that Plaintiff could lift or carry 20 pounds only occasionally and 10 pounds frequently; could stand or walk with normal

---

[3] Plaintiff's brief contains a typographical error regarding the date of the second hearing. As Defendant notes, the second hearing was held on August 4, 2020, not August 4, 2019. *See* Pl. Mem., ECF No. 17-1, at 3; Def. Mem., ECF No. 24-1, at 2 fn. 2.
[4] *See supra.*
[5] Defined in 20 C.F.R. 404.1567(b) as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

breaks for a total of only six hours in an eight hour workday; could sit with normal breaks for a total of only six hours in an eight hour workday; could do frequent balancing; could only occasionally climb ramps or stairs, stoop, kneel, or crouch; could never climb ladders, ropes, or scaffolds or crawl; and could only do occasional fingering. And lastly, at Step Five, the ALJ determined that Plaintiff cannot perform her past relevant work as a circulation or accounting clerk, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.[6] Accordingly, the ALJ concluded that Plaintiff was not disabled under Sections 223(d) and 1614(a)(3)(A) from December 31, 2009 through June 30, 2018. This timely appeal followed.

**Discussion**

Plaintiff first argues that the ALJ erred in his evaluation of her conditions under the Listing of Impairments. Specifically, Plaintiff asserts that she has several co-occurring immune system disorders that meet or equal the 14.00 Listing requirements. Plaintiff also argues that the ALJ erred in formulating her RFC by failing to limit her to sedentary work,[7] failing to limit her contact with the public and failing to limit her to only occasional handling. In response, the Commissioner argues that the ALJ correctly found that Plaintiff's impairments, although severe, did not satisfy the criteria of Listings 14.02 or 14.10. And further, that substantial evidence supported the ALJ's Step Three findings. The Commissioner also argues that the ALJ's findings regarding Plaintiff's RFC are supported by substantial evidence in the record. The Court agrees with the Commissioner.

1. *The ALJ Did Not Err at Step Three*

---

[6] These were identified by Ms. Dawn Blythe, the Vocational Expert ("VE"), who testified at the August 4, 2020 hearing, as: (1) furniture rental clerk, 295.357-018, SVP 2, exertional level light, 52,296; (2) children's attendant, 349.677-018, SVP 2, exertional level light, 5,472; and (3) counter clerk, 249.366-010, SVP 2, exertional level light, 1,617.

[7] Plaintiff refers to the error as failing to limit her to "less than light exertion." The exertional work levels are sedentary, light, medium, heavy and very heavy. *See* 20 C.F.R. § 404.1567. The Court interprets Plaintiff's argument to mean that she should have been limited to sedentary work.

At Step Three, Plaintiff bears the burden of providing medical evidence to demonstrate that her impairment(s) "meet *all* of the specified medical criteria" comprising a listing in the Administration's regulations. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Regardless of severity, an impairment that satisfies *some* of the listed criteria does not qualify as a disability for purposes of receiving benefits. *See id.* (emphasis added). And to demonstrate that she meets the criteria, Plaintiff "must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.926(b).

Both Listings 14.02 and 14.10, which are applicable to immune system disorders, require "[i]nvolvement of two or more organs/body systems with: (1) One of the organs/body systems involved to at least a moderate level of severity; and (2) At least two of the constitutional symptoms or signs (severe fatigue[8], fever, malaise[9], or involuntary weight loss)" or "[r]epeated manifestations of [SLE/Sjogren's syndrome], with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1) limitation of activities of daily living (2) limitation in maintaining social functioning or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." Appendix 1 §§ 14.02A-B; 14.10A-B.

Plaintiff avers that she has had "long-standing symptoms of autoimmune disease," including noted constitutional symptoms of lupus, including "malaise, joint pain, chest pain, which are coupled by stress." Pl. Mem. at 8. And she claims that despite "trying to stay active in day-to-day

---

[8] Severe fatigue is defined as a "frequent sense of exhaustion that results in significantly reduced physical activity or mental function." Appendix 1 § 14.00C2.

[9] Malaise is defined as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id.*

6

life, exercising regularly, and having a healthy diet," she is "plagued by persistent pain and weakness due to fibromyalgia and lupus." *Id.* Given these assertions, Plaintiff takes issue with the fact that the ALJ did not explain why Plaintiff's autoimmune illnesses do not meet or equal the Listing requirements. The Commissioner responds that a more detailed explanation than was given is not required, especially where other parts of the ALJ's decision make manifest that the determination is supported by substantial evidence.

An ALJ does not have to explain on the record every reason justifying a Listing decision if the correct legal principles could lead to the conclusion reached. *See Bushey v. Berryhill*, 739 F. App'x 668, 672 (2d Cir. 2010); *Pearson v. Comm'r of Soc. Sec. Admin.*, NO. 4:20CV00298 DPM-JTK, 2021 WL 1916270, at *3 (E.D. Ark. Apr. 16, 2021) ("If the record overall supports an ALJ's Listings decision, the ALJ has not erred even if he fails to sufficiently explain his findings…"). The Court may also look at credible evidence in other portions of the ALJ's decision to find that substantial evidence supports his or her determination. *See Salmini v. Comm'r of Soc. Sec.*, 371 Fed. App'x 109, 112 (2d Cir. 2010) (explaining that although the ALJ might have been more specific in detailing the reasons that plaintiff's condition did not satisfy the Listings, other portions of the decision and plaintiff's own testimony provided substantial evidence to support the ALJ's Listings determination); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam) (finding that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him").

Here, the ALJ determined that there was "no evidence of involvement of two or more organ systems with at least one to a moderate degree of severity and no evidence of the requisite constitutional symptoms of severe fatigue, fever, malaise or involuntary weight loss." Tr. 20. As to the involvement of two or more organ systems with at least one to a moderate degree of severity,

7

the only active episode of lupus suffered by Plaintiff involved a single body system—the skin.[10] Plaintiff's dermatologist, Charles Halasz, diagnosed her with discoid lupus erythematosus in October 2015. At that time, she was exhibiting a bald spot on her scalp. Tr. 566. After that spot healed, however, Plaintiff experienced no further lupus-related skin issues during the relevant period. Tr. 979, 985, 991, 994, 1039, 1041–42, 1044–45, 1068. The remainder of Plaintiff's argument in this vein relies solely on her subjective opinions[11] which are inconsistent with the medical findings in the record. For example, regarding her musculoskeletal system, Plaintiff reported chest and abdominal pain, as well as numbness in the hands in July 2013. A physical examination from that time, however, included normal findings for the musculoskeletal and neurological systems. Tr. 23; 999–1000. The examination also found no clubbing, cyanosis or edema in Plaintiff's extremities. *Id.* In June 2015, Plaintiff again reported pain and weakness due to her SLE. A physical examination from that time, however, included normal findings with clear lungs, an absence of skin issues and no range of motion limitation. Tr. 23; 993–94. Plaintiff also described herself during that period of pain as doing "well overall" and active in her day-to-day life. *Id.* Similarly, she complained of hand and feet pain in March 2018, but physical examinations from that time, and from May 2018, noted normal motor strength in upper and lower extremities and no synovitis.[12] Tr. 24; 1039–44. During both 2018 examinations, Plaintiff shared that she exercised two times per week. Tr. 1040, 1043.

---

[10] The Court notes that Plaintiff does not argue that her Sjogren's syndrome meets or equals the Listing criteria.

[11] In her memorandum, Plaintiff refers to a letter she wrote to her rheumatologist, citing lower body weakness, cramping and stiffness, among other symptoms. Tr. 1025–26. The rheumatologist, however, notated on this letter that her x-ray revealed normal pelvis and hips, hands and knees, wrists and feet, elbows and ankles and shoulders and sacroiliac joints. Tr. 1029. Further, his notes do not confirm Plaintiff's subjective complaints with any objective medical findings. *See id.* at 1025–29.

[12] In May 2018, Plaintiff was diagnosed with osteoarthritis of the spine with radiculopathy, cervical region, and rheumatoid arthritis, which caused bilateral neck pain, as well as right shoulder, arm and hand pain. Tr. 24. Those symptoms, however, are unrelated to the autoimmune diagnoses or Listings at issue on appeal.

And although Plaintiff also avers that her conditions affect her immune system, she provides no medical evidence to support the argument that she was "susceptible to illnesses of all sorts." Pl.'s Mem. at 9. She points only to a hospitalization in July 2015 for cellulitis resulting from an insect bite as evidence that her body reacts abnormally to stimuli. *See id.* However, after receiving intravenous antibiotics and a debridement of the wound on her right leg, her cellulitis improved, and the issue fully resolved. Tr. 23; 696–97. And the record reveals no other frequent infections or illnesses suffered by the Plaintiff during the relevant period.

As to the requisite constitutional symptoms, Plaintiff does not argue that she had fever or involuntary weight loss. Regarding severe fatigue, Plaintiff did not offer any medical findings demonstrating this symptom. Instead, her medical reports show that she exercised regularly. Tr. 993, 1040, 1046, 1067, 1123. She also worked at a Boys and Girls Club from 2014 to 2016, which required her to "be active with the kid[ ] during games and activities and exercise." Tr. 445. Plaintiff also did not argue or provide any medical evidence demonstrating limited mental function, nor does the record reflect such a limitation. To the contrary, the record contains multiple notations of full mental functioning. Tr. 574, 729, 878, 969, 1000, 1492, 1668.

And regarding malaise, in a July 2012 appointment with her primary care physician, Jennifer Bendl, Plaintiff complained of fatigue and joint pain after stopping medications due to her inability to pay for them. Upon physical examination, findings were normal except for blue toes. Tr. 22; 1005–06. She began new medication after that time and was instructed to see a rheumatologist. When the Plaintiff returned to Dr. Bendl in August 2012, she reported a resurgence of her auto immune-related symptoms, again after a pause in her medications due to an insurance issue. Tr. 22; 1002–03. At her annual checkup with Dr. Bendl in July of 2013, Plaintiff again reported feeling malaise, but at that time, she was still unable to obtain her medications. Tr. 23; 999–1000. The

9

ALJ considered these appointments, a review of which found "no leg cramps, no muscular pain, and no arthritis. A physical examination included normal findings for the musculoskeletal system, no clubbing, cyanosis, or edema in the extremities, and a normal neurological examination." Tr. 23. Accordingly, the Court concludes that the ALJ's finding that Plaintiff's symptoms do not meet or equal the requirements of Listings 14.02 or 14.10 is supported by substantial evidence.

2. *The ALJ Did Not Err at Step Four*

The Plaintiff argues that the ALJ made three errors in formulating her RFC: (1) there should have been a limitation for little or no public contact, (2) there should have been a finding for only occasional handling (in addition to occasional fingering) and (3) she should have been limited to sedentary work. The Commissioner argues that Plaintiff failed to cite relevant medical evidence in support of her arguments and that substantial evidence supports the ALJ's RFC assessment.

In formulating an RFC, an ALJ uses "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *see also Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) ("[T]he ALJ must weigh all the evidence to make a[n RFC] finding consistent with the record as a whole."). But it is the plaintiff's burden to provide evidence to establish any work-related limitations. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

Plaintiff first claims she should have little or no public contact due to her suppressed immune system and resulting susceptibility to illnesses. In support of this argument, she cites only her own hearing testimony and a letter she wrote to her rheumatologist. Tr. 60; 1025. There is no medical evidence in the record that her conditions render her particularly vulnerable to illness and that she should avoid contact with the public. To the contrary, as noted by the ALJ, in her Activities of Daily Living Report, Plaintiff described frequent social outings and work for a youth program, which included supervising others and interacting with children. Tr. 18.

Plaintiff next claims that the ALJ should have included a limitation regarding occasional handling due to her hand numbness and cramping. Again, her citations include only evidence of subjective complaints. *See* Tr. 806; 1025; 1029.[13] The record otherwise indicates that Plaintiff had no problem with personal care and that she performed household chores without assistance.[14] Tr. 406–09. And as noted by the ALJ, Plaintiff's complaints of finger cramping—to the extent it limited her ability to handle—were not supported by medical evidence in the record. Tr. 25.

Lastly, Plaintiff argues the ALJ should have limited her to sedentary work. However, yet again, Plaintiff provides no citations to objective medical evidence in the record that the ALJ failed to consider or which support her asserted limitation. She relies on her own descriptions of her symptoms and pain to prove that she is unable to perform even light exertion work. As described above, Plaintiff's physical examinations repeatedly found that she had full strength, normal range of motion and normal gait. *See, e.g.,* Tr. 969, 1042, 1172, 1306, 1339. And the record is replete with examples of Plaintiff's participation in activities of daily living, exercise and employment. *See, e.g.,* Tr. 440–45; Tr. 993.

Although Plaintiff disagrees with the Commissioner's findings, and offers alternate findings, she does not argue that the ALJ's RFC determination is not supported by substantial evidence. Rather, she seeks an alternative outcome based on only her subjective complaints. But an ALJ is not required to accept a claimant's complaints without question. The ALJ appropriately weighs the reliability of the claimant's testimony in the context of the entire record evidence. *See Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019); *see also* 42 U.S.C. § 423(d)(5)(A)

---

[13] Plaintiff also cites to "Tr. 1125." This piece of record evidence from 2018 does confirm that she has a history of "4 years of progressive bilateral neck pain with pain radiating into right shoulder right arm into her right hand primarily the thumb and second fingers of her right hand occasionally her middle finger" but it also confirms that she has yet had no physical therapy and has managed her symptoms with medication. Tr. 1125. In that same doctor's report, Plaintiff's details included that she was employed part-time and that she exercised two times per week. *See id.*

[14] The Court also notes that prior medical findings reports also concluded that Plaintiff could perform unlimited handling. Tr. 103; 121.

("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"). And it is not the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Brault*, 683 F.3d at 448 (the Court can reject the Commissioner's findings "only if a reasonable factfinder would *have to conclude otherwise*") (internal quotation marks and citation omitted). The Court's standard of review is "so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). Accordingly, the Court finds that the ALJ's formulation of the Plaintiff's RFC is supported by substantial evidence.

**Conclusion**

For the foregoing reasons, the Plaintiff's Motion to Reverse, ECF No. 17, is DENIED and the Commissioner's Motion to Affirm, ECF No. 24, is GRANTED. The Clerk of the Court is directed to enter Judgment in favor of Defendant and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of September 2022.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE